

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

STEPHANIE WILSON, et al.,      ]
                               ]
   Plaintiff(s),               ]
                               ]
vs.                            ]   CV-02-CO-02611-W
                               ]
STATE OF ALABAMA DEPARTMENT OF ]
EDUCATION, et al.,             ]
                               ]
   Defendant(s).               ]

MEMORANDUM OF OPINION

The plaintiff in this action, Stephanie Wilson on behalf of her son Jamal Wilson (hereinafter "Wilson"), claims the defendant failed to provide appropriate educational services for Jamal as required by the Individuals With Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA"),[1] Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and the regulations promulgated under those statutes. She also has asserted claims under 42 U.S.C. § 1983. On February 14, 2003, the Court entered a

---

[1] IDEA succeeded the Education for All Handicapped Children Act of 1975.

Page 1 of 17

Settlement Agreement between plaintiff and one of the defendants, the Tuscaloosa County Board of Education. [Doc. 20]. The only remaining defendant is the Alabama State Department of Education [hereinafter, "State" or "State Education Department"]. The cause is presently before the court on the State's motion for summary judgment. [Doc. 36].

I.      Summary Judgment Standard.[2]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting

---

[2]Because a jury trial is not available in actions for injunctive relief and equitable damages, the usual summary judgment principles do not apply in an IDEA case. *Loren F. v. Atlanta Indep. School Dist.*, 349 F.3d 1309, 1313 (11th Cir. 2003). However, the State's summary judgment motion is limited to plaintiff's claims under Section 504 and Section 1983, and the Court is accordingly constrained by Fed. R. Civ. P. 56.

evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

II.     Statement of Facts.

The following facts are undisputed:[3]

Jamal Wilson was sixteen years old on February 5, 2004. [Doc. 40]. He has been diagnosed with and suffers from Attention Deficit Hyper-Activity Disorder (ADHD), combined type, and child onset conduct disorder and he has been treated for these disabilities since he was seven years old. [Doc. 40].

Through July 2001, Jamal attended the Tuscaloosa City School System [hereinafter, "the City System"]. On September 24, 1995, the City System determined that Jamal was eligible for services under Section 504 and drafted a 504 education plan for him. Jamal entered the seventh grade in the City System for the first time in the 1999-2000 school year. He failed the seventh grade that year and the next year. He then transferred to Holt

---

[3] The parties submitted a "Joint Status Report" on February 5, 2004, in which they agreed to facts set out in this section. The parties have identified additional facts which they claim are material and not in dispute in their motion submissions. The court has indicated where facts are in dispute. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

High School in the Tuscaloosa County School System [hereinafter, "the County System"].

Upon transfer, Jamal was placed in regular education and Section 504 services were not provided. After a series of behavioral and academic problems, the Director of the Tuscaloosa County Board of Education changed Jamal's placement from regular education to the Tuscaloosa Alternative School on October 15, 2001. After placing Jamal in the alternative environment, the local education agency ran a battery of the Test of Adult Basic Education (TABE) to determine his level of performance in various academic areas. Jamal was not referred for special education services after the test, but the local education agency referred Jamal for special education services on November 21, 2001. On January 31, 2002, the local education agency conducted an Individualized Education Plan ("IEP") Team meeting and determined that Jamal was not eligible for services under IDEA. The determination was made without obtaining any of his disciplinary or special education records from the City System and the decision was based on standardized test scores, which indicated Jamal was borderline mentally retarded.

On April 8, 2002, Wilson filed a request for due process with the state education agency. Prior to the hearing, however, the local education agency referred Jamal to a psychologist to conduct evaluations for his eligibility for special education. Based on this referral, the Honorable John Green, III, who presided over the July 26, 2002, state hearing, declined to rule on the issue of disability.

Wilson received the decision on August 26, 2002, and, on September 23, 2002, filed a motion to amend the decision of the hearing officer and a "Notice of Intent to File Civil Action." Wilson filed the present action on October 23, 2002.

In response to the present motion, Ms. Wilson submitted an affidavit in which she stated that Jamal did not receive special education services at the City Schools after the Christmas break in 1995, and that she filed a request for a due process hearing with the State on August 6, 2001, prior to Jamal's transfer to the County System. She stated that the County System placed Jamal in regular classes despite his behavioral problems, lack of grade advancement, the pending hearing request, and the information she provided to the County System about his disability. She further states that

Jamal's records were not transmitted to the County Schools until three months after his transfer.

The plaintiff claims: (1) The State Department of Education violated IDEA by failing to have policies and procedures in place to ensure compliance with the "Child Find" requirements set forth in 34 C.F.R. 300.125; (2) the State violated similar "Child Find" obligations established in Section 504 and 34 C.F.R. 104.32 - 104.36; (3) the State failed to provide procedural safeguards and a fair and impartial hearing on the alleged violations of Section 504 as required by 34 C.F.R. 104.36. Wilson has also asserted these same claims under 42 U.S.C. § 1983.

III. Discussion.

The State contends that Section 504 provides a private cause of action to enforce claims of discrimination, and Wilson cannot show the State treated him differently than other students. Alternatively, the State contends it is entitled to summary judgment because it is not required to provide Section 504 hearings or to monitor compliance with Section 504 by

local boards of education. [Doc. 36].[4] Finally, the State claims it is entitled to Eleventh Amendment Immunity.

A.   Eleventh Amendment Immunity.

As a department of the state government, the State Department of Education is entitled to Eleventh Amendment immunity. Ala. Code § 16-2-1. "The Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity." *Cross v. State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502-03 (11th Cir. 1995)(citations omitted). Congress has not abrogated Eleventh Amendment immunity in Section 1983 cases, nor has the State of Alabama waived its immunity. *Id.* Thus, the Eleventh Amendment bars Wilson's Section 1983 suit.

Wilson's claims under Section 504 are not barred because Congress has unambiguously conditioned the receipt of federal funds on a waiver of Eleventh Amendment immunity to claims under section 504 of the

---

[4]As previously noted, the State has not moved for summary judgment as to Wilson's IDEA claims.

Rehabilitation Act. By continuing to accept federal funds, state agencies have waived their immunity. *Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*, 344 F.3d 1288 (11th Cir. 2003).

    B.    Proof of Intentional Discrimination.

Wilson contends she need only show the State failed to meet its regulatory obligations to succeed on her Section 504 claims, citing *New Mexico Assn. for Retarded Citizens v. State*, 495 F. Supp. 391 (D.Ct. N.M. 1980), reversed, 678 F.2d 847 (10th Cir. 1982) and *Lau v. Nichols*, 414 U.S. 563 (1974), abrogation recognized, *Alexander v. Sandoval*, 532 U.S. 275 (2001). It is possible that no private cause of action exists to enforce the Section 504 regulations upon which Wilson relies. *Alexander*, 532 U.S. at 293. The State hasn't addressed this issue, and the Court will, therefore, assume Wilson can pursue her claim.

However, to the extent Wilson seeks money damages under Section 504, the Eleventh Circuit has held that plaintiffs must prove intentional discrimination. *Wood v. President and Trustees of Spring Hill College*, 978 F.2d 1214, 1219-20 (11th Cir. 1992)(citations omitted). "In addition, controlling precedent on Title VI remedies, made applicable to section 504

actions under the Rehabilitation Act, indicates that compensatory damages are precluded in cases of unintentional discrimination, but are permissible on a showing of intentional discrimination." *Id.* at 1219-20 (citations omitted). Thus, Wilson's claim that the State is required to provide "child-find" services and due process hearings under Section 504 will not, if proven, entitle Wilson to compensatory damages. She must further prove intentional discrimination. To the extent she claims disparate treatment, there is no direct or circumstantial evidence that the state intended to discriminate against Jamal on the basis of his disability by failing to provide services already provided by the local education agencies.[5]

Accordingly, Wilson's claims for money damages under Section 504 are due to be dismissed.[6]

---

[5]Wilson has not refuted the State's evidence that she settled with the City after a hearing officer was assigned but prior to the hearing. Affidavit of Emily Graham, Doc. 37, Ex. A. She concedes that her claims with the Tuscaloosa County Schools were the subject of a due process hearing and were finally settled after this action was initiated. She has listed many other actions she believes were discriminatory, but all occurred while Jamal was attending the local schools and none can be attributed to the State.

[6]Wilson denied she must show intent to discriminate to succeed on her claims without differentiating her claims for injunctive relief under Section 504. The claims for equitable relief do not require proof of intentional discrimination. The State has not challenged Wilson's ability to prove a disparate impact claim entitling her to injunctive relief, and the court does not decide this motion on that issue. However, the Court notes the lack of statistical evidence supporting the claim and the evidence that the

C. The State's Duties under Section 504.

"A recipient that operates a public elementary or secondary education program or activity" is required by the Rehabilitation Act and its implementing regulations to find qualified handicapped persons and notify them of the recipient's duties under the Act [34 C.F.R. § 104.32]; to provide a free appropriate public education to each qualified handicapped person in an appropriate educational setting [34 C.F.R. §§ 104.33, 104.34]; to establish and follow procedures for the evaluation and placement of qualified handicapped individuals [34 C.F.R. § 104.35]; and to establish and implement a system of procedural safeguards with respect to its actions regarding the identification, evaluation or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services. [34 C.F.R. § 104.36]. The State contends it is not the entity responsible for implementing these regulations because it is not

---

local agencies provided the services Wilson claims the State failed to provide would seemingly defeat any claim that "a facially-neutral state action create[d] an obstacle between disabled persons and access to federally-funded programs and activities that is greater than the obstacle for nondisabled persons." *Berg v. Florida Dept. of Labor and Employment Security*, 163 F.3d 1251, 1254 (11th Cir. 1998).

"operating a public elementary or secondary education program or activity." The State claims the local education agencies are responsible for implementing Section 504 procedures.

Ultimately, the law is far from clear, but several issues raised by the parties can be summarily considered and dismissed. First, Wilson contends that the State's responsibility to hold due process hearings arises under 34 C.F.R. §§ 104.7. That regulation clearly applies to the State in its role as "[a] recipient that employs fifteen or more persons," not as "[a] recipient that operates a public elementary or secondary education program or activity." *See e.g. Southeastern Community College v. Davis*, 422 U.S. 397, 409-11 (1979)(noting distinction between Sections 501 and 503 requirement of affirmative action to overcome disabilities caused by handicaps and lack of reference to affirmative action in Section 504).

Second, Wilson contends the State has admitted it conducts Section 504 hearings in its papers supporting the Motion to Dismiss, and cannot now deny it has responsibility. In fact, the State said it was "responsible for implementing the law under IDEA, as amended and Section 504, and further is responsible for enforcing the decisions of the due process hearing

officers." [Doc. 11]. It further stated it was the entity "responsible for implementing the process and enforcing the decisions of the hearing officers." *Id.*[7] However, the State's admitted responsibility for "implementing . . . Section 504" does not preclude the State's denial of responsibility for conducting Section 504 due process hearings or monitoring compliance with other Section 504 responsibilities. The fact that the State complies with its monitoring and due process responsibilities under IDEA does not prove it has co-extensive responsibilities under Section 504. *Compare* 34 C.F.R. §§ 300.129, 104.36, 300.125, 104.32.[8]

The heart of the matter is Wilson's claim that the State "operates a public elementary or secondary education program or activity." Under the law, these are the entities that must provide the services outlined in 34 C.F.R. §§ 104.32 - 104.36. Wilson has not offered evidence in support of her contention that the State Department of Education is such an entity, but she

---

[7] The State also submitted the affidavit of its Education Administrator, Emily Graham, who outlined her general responsibilities with respect to due process hearings and her specific actions with regard to the plaintiff's requests.

[8] This distinction is important because any failure to implement IDEA requirements subjects the State to equitable remedies only. A failure to implement mandated Section 504 procedures might subject the State to money damages.

has made several arguments of law.[9]  She argues that the State Department of Education has intervened in the management of several local systems in the State, and thus is "operating a public . . . education program or activity."  However, there is no evidence that the State has intervened in the management of the City or County Schools attended by Jamal, and if any Section 504 duties are imposed by the State's intervention in other systems, they cannot benefit the plaintiff in this action.  Wilson also argues that the State Department of Education operates public schools because the State of Alabama has the duty to "establish, organize and maintain a . . . system of public schools," citing Alabama Const. Art. XIV, § 256.  However, the State could "establish," "organize" and "maintain" public schools but still not "operate" public schools.[10]  The State's duties under Alabama law can be

---

[9]Her claim that the defendant has the burden of proof on this issue in these summary judgment proceedings is faulty.  The State has properly supported its motion for summary judgment by challenging Wilson's ability to provide evidence in support of her case.  *See Celotex*, 477 U.S. at 324.

[10]The Alabama case law cited by Wilson is similarly unrevealing as to the State's duties with regard to the operation of public schools.  *See Mobile, Ala. - Pensacola, Fla. Bldg. & C.T.C. v. William*, 331 So. 2d 647, 649 (Ala. 1976)(holding county school board project for building public school was subject to minimum wage law applicable to state projects because board was a "state institution" within meaning of the act) and *Williams v. State*, 230 Ala. 395, 161 So. 507, 508 (1935)(giving state preference over other creditors of failed bank for public school funds raised by county tax).

relevant to its Section 504 duties only to the extent the State is required to, and does, "operate a public . . . education program or activity."

Wilson finally argues that "operate" does not mean providing day-to-day educational services, but, according to Webster's, means "To run or function effectively; To have an effect or influence; To direct or control the functioning of." Any one of those meanings is possible, but the State's interpretation of "operation" as meaning the control of day-to-day functioning is equally reasonable. Furthermore, the State has presented evidence that the agency responsible for enforcing the Section 504 regulations believes that Section 504 does not require the State to monitor compliance by local educational agencies or to operate a complaint system. Doc. 43, Ex. 1. This court must give controlling weight to the agency's interpretation of its regulations "unless it is plainly erroneous or inconsistent with the regulation." *Legal Envtl. Assistance Found., Inc. v. E.P.A.*, 276 F.3d 1253, 1262 (11th Cir. 2001)(citations omitted). "Thus, we will give effect to the agency's interpretation so long as it is 'reasonable,' that is, so long as the interpretation 'sensibly conforms to the purpose and wording of the regulations.'" *Id.* "We will afford the agency interpretation such

deference even if this interpretation is not 'the best or most natural one by grammatical or other standards.'" *Id.*

Ultimately, Wilson is claiming that because the State is the recipient of federal funds which are distributed to local agencies, who thereby also become recipients of federal funds, the State and the local agencies are obliged to provide redundant services. Nothing in the regulations indicates such an intention. Even if the State and the local agencies are equally obliged by the regulations to provide due process hearings and child-find services, Wilson has not pointed to any provision indicating their obligation cannot be satisfied by providing one hearing and one monitoring system at the local level. Absent a clear indication to the contrary, and absent any evidence that a second hearing or "child-find" system at the State level would fill a legitimate purpose under Section 504, the Court declines to interpret the regulations so broadly. *See Alexander v. Choate*, 469 U.S. 287, 299 (1985)(assuming without deciding that some conduct having a disparate impact on the handicapped might be reached, but "reject[ing] the boundless notion that all disparate impact showings constitute a prima facie case under § 504").

IV.  Conclusion.

The State's motion for summary judgment will be granted as to Wilson's claims under Section 504 of the Rehabilitation Act and 42 U.S.C. § 1983. The case will be set for non-jury trial on Wilson's IDEA claims for equitable relief only. A separate order will be entered.

Done this 20 day of May 2004.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE