UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| STEPHANIE WILSON, | ]<br>] |
| Plaintiff, | ]<br>] |
| vs. | ]   CV-02-CO-02611-W<br>] |
| STATE OF ALABAMA DEPARTMENT OF EDUCATION, | ]<br>]<br>] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration defendant State of Alabama Department of Education's ("State" or "State Department of Education") motion for summary judgment. (Doc. 61.) The plaintiff, Stephanie Wilson on behalf of her son Jamal Wilson, filed a complaint in this Court that included claims under the Individuals with Disabilities Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"),[1] Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), and 42 U.S.C. § 1983.  On May 20, 2004, the Court

---

[1] IDEA succeeded the Education for All Handicapped Children Act of 1975, which was referred to as EAHCA or EHA by the courts.

granted the State's motion for summary judgment on Plaintiff's Section 504 and Section 1983 claims.[2] Defendant's new motion for summary judgment addresses Plaintiff's remaining IDEA claims. The issues raised in Defendant's motion have been briefed by both parties and are now ripe for decision. Upon full consideration, Defendant's motion is due to be granted.

II.   Background.

Jamal Wilson was born on September 20, 1986. He has been diagnosed with attention deficit hyper-activity disorder (ADHD) and child onset conduct disorder. He has been treated for these disabilities since a very young age.

Until July of 2001, Jamal attended school in the Tuscaloosa City School system. Jamal was found to be eligible for services under Section 504 while in the Tuscaloosa City School system. In 2000 and 2001, Jamal failed the seventh grade twice. He subsequently transferred to Holt High School in the Tuscaloosa County School system. While at Holt High School, Jamal behaved poorly and continued to have problems academically. In October of 2001, Jamal was transferred to the Tuscaloosa Alternative School. On November

---

[2]The State Department of Education is the only remaining defendant at this time. Plaintiff and defendant Tuscaloosa County Board of Education executed a settlement agreement, which was entered by this Court on February 14, 2003. (Doc. 20.)

21, 2001, Tuscaloosa County Schools referred Jamal for evaluation for special education services under the IDEA. An eligibility team met on January 31, 2002, and determined that Jamal was not eligible for IDEA services. On April 8, 2002, Ms. Wilson filed a request for due process. John Green, III, presided over the hearing as an administrative officer on May 20, July 25, and July 26, 2002. Prior to that hearing, however, he denied Ms. Wilson's request to join the State Department of Education as a party. Plaintiff filed her action in this Court to appeal the hearing officer's final decision on October 23, 2002.

III.   IDEA and the Summary Judgment Standard.

The "principal purpose of the [IDEA] is 'to assure that all children with disabilities have available to them . . . a free and appropriate public education which emphasizes special education and related services designed to meet the handicapped child's unique needs, . . . [and to ensure] that the rights of handicapped children and their parents or guardians are protected." *N.B. v. Alachua County Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir. 1996) (quoting 20 U.S.C. § 1400(c)). In order to "carry out these objectives, the IDEA provides procedural safeguards." *Id.* (citing *Honig v. Doe*, 484 U.S. 305, 311−12 (1988)). One of these procedural safeguards is the "opportunity for

an 'impartial due process hearing.'" *Id.* "Any party aggrieved by the resulting state administrative findings and decision has the right to file suit in the United States District Court regardless of the amount in controversy." *Jefferson County Bd. of Educ. v. Breen*, 853 F.2d 853, 856 (11th Cir. 1988). "In that lawsuit, 'the court shall receive the records of the administrative proceedings,[3] shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" *Id.* (quoting 20 U.S.C. § 1415(e)(2)).

Once an IDEA case is before the district court, however, the "usual F.R. Civ. P. 56 summary judgment principles do not apply." *Loren v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1313 (11th Cir. 2003). Instead, summary judgment serves as "a procedural vehicle requiring [the district judge] to decide . . . [the

---

[3]The defendant has provided this Court with copies of the administrative hearing officer's decision, transcripts for three days of hearings, and the exhibits considered by the administrative hearing officer. These copies are not certified. However, on January 4, 2005, this Court notified the defendant that it must provide the Court with a full administrative record. (Doc. 72.) The Court has reviewed the documents provided and it is the Court's belief at this time that the documents presented by the defendant comprise an accurate and complete copy of the administrative record in this case. Plaintiff has not objected to these copies nor made any representation to the Court that they are incomplete or inaccurate.

IDEA] action on the basis of the administrative record." *Id.* at 1313 n.4 (quoting *Suzawith v. Green Bay Area Sch. Dist.*, 132 F. Supp. 2d 718, 724 (E.D. Wis. 2000)).[4] The district court may not "substitute its own judgment on sound educational policy for those made at the state administrative level." *Jefferson County Bd. of Educ.*, 853 F.2d at 856 (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)). Rather, "the role of the district court is simply to '*review* the administrative determinations.'" *Id.* at 857. (quoting *Manecke v. School Bd.*, 762 F.2d 912, 919 (11th Cir. 1985) (emphasis in original), *cert. denied*, 474 U.S. 1062 (1986)).

The Eleventh Circuit has emphasized, however, that courts "owe some judicial deference to local administrative agency judgments." *Loren*, 349 F.3d at 1314 n.5 (citing *Deal v. Hamilton County Dept. of Educ.*, 259 F. Supp. 2d 687, 691–92 (E.D. Tenn. 2003)). This is particularly true when matters call for educational expertise. *Id.* Therefore, administrative findings of fact "are considered to be prima facie correct." *Id.* If a reviewing court fails to adhere to administrative findings of fact, "it is obliged to explain why." *Id.* However,

---

[4]However, summary judgment "does not serve to prevent a court from hearing [additional] evidence pertaining to questions of material fact." *Loren*, 349 F.3d at 1313 n.4; *see also Walker County Sch. Dist v. Bennett*, 203 F.3d 1293, 1298 (11th Cir. 2000).

the "extent of deference to be given the administrative findings of fact," nonetheless remains "an issue left to the discretion of the district court." *Jefferson County Bd. of Educ.*, 853 F.2d at 857. Similarly, "the extent of deference to be given to the administrative *decision* is left to the sound discretion of the district court." *Walker County Sch. Dist v. Bennett*, 203 F.3d 1293, 1297–98 (11th Cir. 2000) (emphasis added).

IV.   Analysis.

Plaintiff argues that Jamal Wilson was denied his rights under the IDEA because the plaintiff was erroneously denied a hearing against the State at the administrative level.[5]   Ms. Wilson asserts that the failure to include the State Department of Education in the administrative hearing is "reversible error."[6]

---

[5] The Court recognizes that its role in this case is merely to review administrative determinations, *Jefferson County Bd. of Educ.*, 853 F.2d at 857, and the testimony and other evidence relied upon by the administrative officer in his decision relate largely to the role of only the Tuscaloosa County Board of Education. However, because the ultimate issue in Plaintiff's case against the State is Jamal Wilson's eligibility for services under the IDEA, and that issue was explored thoroughly in the administrative hearing, the Court finds that the administrative record is sufficient to make its determinations regarding the alleged liability of the State Department of Education based on a preponderance of the evidence.

[6] Plaintiff also argues that she was denied a "fair and impartial hearing" because the hearing officer's decision to not join the State as a party "clearly reflects the admitted and perceived bias on the part of the hearing officer." (*Id*. at 48.) The Court disagrees that the hearing officer's refusal to join the State as a party reflects his bias in favor of the State. In fact, it appears that the hearing officer was attempting to avoid

(Doc. 69 at 47.)  The Court agrees with the plaintiff that the State *could* have been joined as a party to the administrative hearing under the IDEA.  In *Association for Retarded Citizens of Alabama, Inc. v. Teague,* 830 F.2d 158 (11th Cir. 1987), the Eleventh Circuit Court of Appeals held that the plaintiffs in that case were required to exhaust their remedies against the State at the administrative level before bringing an action in federal court.  The Court of Appeals explained that:

> [The administrative hearing] serves a number of important purposes, including (1) permitting the exercise of agency discretion and expertise on issues . . . ; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error.

*Id*. at 160.  There is no doubt that joining the State Department of Education as a party at the administrative level in this case would fulfill these goals.  If Jamal Wilson was eligible for special education services under the IDEA, the

---

any appearance of impropriety.  There is absolutely no evidence that Plaintiff was denied a fair and impartial hearing.

administrative hearing would have been an appropriate place to develop the factual record and utilize the agency's expertise.[7]

The fact that the State could (or should) have been joined at the administrative level, however, does not mean that Plaintiff is entitled to a remedy because the State was *not* joined as a party. The Eleventh Circuit Court of Appeals has rejected the idea that a per se procedural violation of the IDEA requires a remedy. *See School Board of Collier* County, 285 F.3d 977 (11th Cir. 2002); *Doe v. Ala. State Dept. of Educ.*, 915 F.2d 651 (11th Cir. 1990). The purpose of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education." *Walker County Sch. Dist.*, 203 F.3d at 1294 (citing 20 U.S.C. § 1400(d)(1)(A)). This Court must ask: What is the harm flowing from the procedural violation? *See Doe*, 915 F.2d at 662–63. And, has the procedural defect deprived Jamal Wilson of a free appropriate education? *See School Board of Collier County*, 285 F.3d at 982. In this case, there is no harm flowing from the hearing officer's failure to join

---

[7]The Court acknowledges that the administrative hearing officer may not have been able to order (or enforce) the full relief requested by the plaintiff in this case if he determined that Jamal Wilson was entitled to special education under the IDEA and the State was liable for violations under the Act. Because Jamal was not eligible, however, the issue of whether the relief requested is possible or appropriate in a civil action is not before this Court.

the State at the administrative hearing because Jamal Wilson was not denied a free appropriate education under the IDEA.

The administrative hearing officer in this case concluded that Jamal Wilson was not "disabled" under the IDEA and, therefore, was ineligible for IDEA services. The Court defers to that finding. In fact, after careful review of the administrative record in this case, the Court defers to, and adopts, all of the hearing officer's findings of fact that relate to the evaluation of Jamal Wilson and the conclusion that, at the time of the wrongs alleged by the plaintiff, Jamal was not eligible for services under the IDEA. Because the hearing officer correctly stated the law and regulations in his "Decision and Rationale" and appropriately applied the law and regulations to the facts of this case when he determined that Jamal Wilson's evaluation for eligibility was appropriate[8] and Jamal was ineligible for services under the IDEA because he

---

[8]Plaintiff disputes the administrative hearing officer's finding that Jamal Wilson was ineligible for special education services under the IDEA and alleges that Jamal was not appropriately evaluated for qualifying disabilities. "As the losing part[y] before the district court," however, Plaintiff now "bear[s] the burden" of establishing that Jamal's evaluation was not appropriate under the IDEA. *Loren v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1313 (11th Cir. 2003) (quoting *M.L. v. Fed. Way Sch. Dist.*, 341 F.3d 1052, 1064 (9th Cir. 2003)). Plaintiff has not met this burden, and her allegations in that regard are unfounded.

First, regular education teachers, while required by the IDEA to be present when an Individual Education Program for a disabled child is developed, 34 C.F.R. § 300.34, do not need to be present for the determination of eligibility, 34 C.F.R. § 300.534(a)(1).

did not qualify as "disabled" under state or federal regulations, the Court defers to those determinations as well.

Plaintiff also argues that the State failed to develop and implement sufficient policies to ensure Jamal's timely evaluation. Jamal's ineligibility under the IDEA, however, precludes a remedy for these additional allegations of procedural violations against the State. If Jamal Wilson's evaluation for special education services was at all untimely, no harm flowed from that violation because Jamal was not denied a free appropriate education.

---

Second, the evidence in the record shows that Jamal Wilson's ineligibility was not based solely on BASC test scores. Third, Jamal's BASC scores were not erroneously admitted over Plaintiff's objection. The administrative hearing officer concluded that "BASC behavioral scales are in common usage [and] they're acceptable." (Hr'g Tr. at 830.) Plaintiff has not presented any evidence to the contrary; in fact, she reinforced the administrative hearing officer's determination by asking the Court to accept Dr. James Collier's psychological evaluation of Jamal Wilson, which also makes use of the BASC tests. (Doc. 69 at 43 n.5, Ex. 1.) Finally, a preponderance of the evidence shows that the eligibility team did make a determination that Jamal Wilson was not "emotionally disturbed" and did not have an "other health impairment." The Court defers to the administrative hearing officer's finding in that regard.

Plaintiff also argues that Dr. James B. Collier's psychological evaluation of Jamal Wilson, conducted in early December of 2002 (after the administrative hearing in this case), proves that the eligibility team's determination of ineligibility in January of 2002, and the hearing officer's decision to affirm that determination, was incorrect. Nothing in the evaluation, however, discredits the findings used by the eligibility team in January of 2002, or the administrative hearing officer. The Court also notes that this new evaluation was conducted after Jamal was in juvenile detention for several weeks. Therefore, perhaps a certain increase in psychological distress could be expected.

V.   Conclusion.

The administrative record and Plaintiff's additional submission of evidence are sufficient for this Court to make its judgment and no trial is necessary. For the reasons stated above, defendant State of Alabama Department of Education's motion for summary judgment is due to be granted. A separate order in conformity with this opinion will be entered.

Done this   31st   day of January 2005.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE